THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DORIS LONDON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered December 17, 1974, convicting her of criminal sale of a controlled substance in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. No opinion. Latham, Acting P. J., Rabin, Shapiro and Titone, JJ., concur; Cohalan, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: The central question on this appeal concerns the propriety of the trial

court's ruling which permitted the Assistant District Attorney to cross-examine the defendant concerning two other instances, for which an indictment was pending, in which she allegedly sold heroin to the same undercover police officer who was the main prosecution witness in the instant case. The relevant evidence presented at the trial can be briefly summarized as follows. The undercover officer testified that, on September 17, 1973, a confidential informant brought him to defendant's apartment and introduced him to her. The officer then purchased 75 glassine envelopes containing heroin from defendant. On direct examination, defendant, who had no prior criminal record, denied ever having engaged in this transaction and asserted that the first time she had seen the officer was on a prior court appearance in this case. She further insisted that she had never possessed, used or sold drugs and, in fact, didn't even know what heroin looked like. The confidential informant, the only other observer of the alleged transaction, was not called as a witness. Because an earlier trial had resulted in a mistrial, the Assistant District Attorney, during his cross-examination of defendant, requested that the trial court rule in advance on two questions he proposed to ask the defendant. After a conference in chambers, the trial court ruled that the Assistant District Attorney could ask the two questions but that he would be bound by the answers given. Defendant was then asked, first, whether, on November 2, 1973, she sold heroin to the same undercover officer in her apartment, and second, whether, on November 6, 1973, she spent nearly three hours with the officer, in the presence of others, and sold him heroin. Each of the two questions received a negative response. It is well established that a criminal defendant may be cross-examined concerning any criminal, vicious or immoral acts bearing upon his or her credibility *(People v Sorge,* 301 NY 198, 200). However, it is equally clear that such evidence may not be introduced where it serves " 'no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged' " *(People v Sandoval,* 34 NY2d 371, 375, quoting from *People v Schwartzman,* 24 NY2d 241, 247). In determining whether such evidence should be admitted, a balance must "be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured [in part] by the impact of such evidence if it is admitted after his testimony" *(People v Sandoval, supra,* p 375). While it is true that no evidence was offered to rebut defendant's denials concerning the two other alleged drug transactions, I must, nonetheless, heed the additional caution that "in the prosecution of drug charges, *interrogation* as to prior narcotics convictions (unless proof thereof is independently admissible) may present a *special risk* of *impermissible prejudice* because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders" *(People v Sandoval, supra,* pp 377–378 [emphasis supplied]; see, also, *People v Santiago,* 47 AD2d 476, 479). Given, on the one hand, defendant's testimony on direct examination and the unlikelihood that she would, on cross-examination, confess to other crimes carrying a similar life sentence, and, on the other hand, the fact that the prosecutor would be bound by the witness' answers, it becomes readily apparent that the sole purpose in asking the two questions was to prejudice the jury (see *People v Branch,* 34 AD2d 541, affd 27 NY2d 834; *People v Moore,* 20 AD2d 817; *People v Santiago, supra; People v Reyes,* 48 AD2d 632). Moreover, the two questions were phrased in such a manner as to amount to the introduction of unsworn testimony regarding the facts and

circumstances of the two alleged drug sales (see *People v Fair*, 35 AD2d 519, app dsmd 27 NY2d 814), including the pertinent allegations that (1) the first sale took place in her apartment (thereby bolstering the undercover officer's testimony) and (2) during the second sale, others were present (who, impliedly could corroborate the officer's testimony) for nearly three hours (thereby further bolstering the officer's testimony). I also reject the contention that independent evidence of those other alleged criminal acts would have been admissible for the purpose of establishing an element of the present offense—to wit, identity. Succinctly stated, the *modus operandi* of the crimes here involved was not "sufficiently unique" to permit the introduction of evidence of other similar crimes on the question of identity (see *People v Kennedy*, 27 NY2d 551, 553; Richardson, Evidence [Prince, 10th ed], § 180, p 150).